Melinda Phillips KATTELMAN, et al.

v.

OTIS ENGINEERING CORP., et al.

Civ. A. No. 88–2703.

United States District Court,
E.D. Louisiana.

Oct. 6, 1988.

Baldwin & Haspel, Mary Ann McGrath Swaim, New Orleans, La., for Melinda Phillips Kattelman.

Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, Robert E. Winn, Louis Leonard Galvis, New Orleans, La., for Patricia M. Valentine.

Hebert, Mouledoux & Bland, Maurice C. Hebert, Jr., Wilton E. Bland, III, T.A., John M. Ribarits, New Orleans, La., for Otis Engineering Corp.

Milling, Benson, Woodward, Hillyer, Pierson & Miller, Joseph W. Looney, New Orleans, La., for Chevron USA, Inc.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John C. Combe, Jr., New Orleans, La., for Axelson, Inc.

Galloway, Johnson, Tompkins & Burr, Timothy F. Burr, Deborah B. Ginsburg, New Orleans, La., for Vetco Gray Inc.

## ORDER AND REASONS

FELDMAN, District Judge.

In this case of first impression within the Fifth Circuit,[1] plaintiffs, move this Court to lift the stay enjoining prosecution of any pending or future suits in other forums against the owner of the M/V CHARLES E. MASTERS arising out of an accident in which decedent, Glenn Kattleman, was killed. The stay is now in effect pending the resolution of a limitation of liability proceeding instituted by defendant, Otis Engineering Corporation, pursuant to 46 U.S.C.App. § 185 *et seq.* Plaintiffs further move this Court to remand this case back to state court following a lift of the stay. Plaintiffs' motions are DENIED.

In plaintiffs' original state court petition for damages arising out of an accident aboard the M/V CHARLES E. MASTERS, a vessel owned by Otis, plaintiffs prayed

for relief totalling $6,000,000.00 for various claims on behalf of the decedent, and on their own behalf for loss of consortium, loss of support, loss of prospective inheritance, and the like. Third parties, Axelson, Inc., Vetco Gray, Inc., and Chevron U.S.A. have since filed, or indicated intentions to file, claims for indemnification, contribution, attorneys' fees, and costs against defendant, Otis. The value of the M/V CHARLES E. MASTERS as of January 28, 1988 was established by a marine surveyor as $241,000.00

Pursuant to the Limitation of Shipowners' Liability Act, 46 U.S.C.App. §§ 181 *et seq.*, Otis petitioned this Court for limitation of liability to the value of the vessel and its freight. Defendant's petition was granted, and this Court imposed a stay enjoining the prosecution of any pending or future suits arising out of this action against the shipowner in other forums, pending the resolution of the limitation of liability proceeding. 46 U.S.C.App. § 185; Fed.R.Civ.Pro. Supplemental Rule F(3).

In moving this Court to lift the stay, plaintiffs force the Court to reconcile an inherent tension in admiralty law: the presumption in favor of jury trials and common law remedies as provided by the "saving to suitors" clause of 28 U.S.C. § 1333, and the exclusive federal jurisdiction of admiralty courts provided by the Limitation of Liability Act. As noted admiralty scholars have stated, this conflict has obliged courts to "implement, at one and the same time, two inconsistent and contradictory policies." G. Gilmore & C. Black, *The Law of Admiralty* § 10–18, at 864 (2d ed. 1975).

### I. *Background*

The American judicial system has long provided litigants with an option to prosecute an *in personam* maritime claim by ordinary civil action in state court before a jury. The right finds its roots firmly set in the 18th century. For example, Section 9 of the Judiciary Act of 1789 provided:

---

**1.** The Fifth Circuit has addressed the limitation of liability issue in single claimant cases where the limitation fund total is less than the total of the claim against the vessel. *See Complaint of Mucho K, Inc.,* 578 F.2d 1156 (5th Cir.1978); *Pennell v. Read,* 309 F.2d 455 (5th Cir.1962); *Pershing Auto Rentals, Inc. v. Gaffney,* 279 F.2d 546 (5th Cir.1960). However, this is the first reported case involving multiple claimants with claims exceeding the limitation fund total.

[D]istrict courts ... shall also have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction ... saving to suitors, in all cases, the right of common law remedy, where the common law is competent to give it.

This provision was later embodied in the "saving to suitors" clause of 28 U.S.C. § 1333, which provides:

The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

Thus, where plaintiffs have elected to proceed at common law with their maritime *in personam* claims, courts have traditionally deferred to their choice of forum, even if a limitation of liability action was appropriate, provided that the right of the vessel owners to limit their liability was protected. *See, e.g., Lake Tankers Corp. v. Henn*, 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957); *S & E Shipping Corp. v. Chesapeake & Ohio Railway*, 678 F.2d 636 (6th Cir.1982); *Universal Towing Co. v. Barrale*, 595 F.2d 414 (8th Cir.1979). Despite this presumption in favor of jury trials and common law remedies, the Limitation of Liability Act nevertheless provides for exclusive jurisdiction in admiralty courts—hence, the conflict between the saving to suitors clause and the Limitation of Liability Act.

The Limitation of Liability Act was enacted to protect maritime commerce and encourage the development of an American merchant fleet. *See, e.g., Maryland Cas. Co. v. Cushing*, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954). The Act is "directed at misfortunes at sea where the losses incurred exceed the value of the vessel and the pending freight." *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 151, 77 S.Ct. 1269, 1272, 1 L.Ed.2d 1246 (1957). Limitation respects the economic goal of an orderly marshalling and equitable distribution of the limited assets of the fund; if limitation is available, it protects the vessel owner's commercial risk.

After a shipowner invokes the Act's protections, the district court issues an injunction staying all other proceedings against the shipowner arising out of the same accident, and the court notifies all potential claimants to file in admiralty court claims against the shipowner within a specified time period. Fed.R.Civ.Pro. Supplemental Rule F(4).

Finally, in a concursus proceeding, the district court determines "whether there was negligence, whether it was without the privity and knowledge of the owner; and if limitation is granted, how the fund should be distributed." *Universal Towing Co. v. Barrale*, 595 F.2d 414, 417 (8th Cir.1979); *Farrell Lines, Inc. v. Jones*, 530 F.2d 7, 10 (5th Cir.1976). "[T]he purpose of the limitation proceedings is ... to provide a marshalling of assets—the distribution pro rata of an inadequate fund among claimants, none of whom can be paid in full." *In re Moran Transportation Corp.*, 185 F.2d 386, 389 (2d Cir.1950), *cert. denied*, 340 U.S. 953, 71 S.Ct. 573, 95 L.Ed. 687 (1951).

Of course, this exclusive delegation of equitable power to the federal district court sitting in admiralty denies claimants their right to pursue common law remedies in a jury trial, a right provided them by 28 U.S.C. § 1333. Attempting to reconcile this conflict, courts have articulated two exceptions to the exclusive admiralty jurisdictional grant.

## II. *Exceptions to Exclusive Admiralty Jurisdiction*

First, if the limitation fund total (the value of the vessel and its cargo) exceeds the aggregate of claims against the fund, the district court must allow claimants to proceed in other forums. *See, e.g., Lake Tankers, supra*, 354 U.S. at 150–54, 77 S.Ct. at 1271–73. In that situation, a concursus is unnecessary because the claimants need not compete for larger portions of a limited fund. *S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co., supra*, 678 F.2d at 643. Here, this exception is unavailable because the limitation fund is substantially less than the aggregate claims against the fund.

The second exception to exclusive federal court jurisdiction may be invoked when a single claimant who seeks damages in excess of the limitation fund stipulates to the admiralty court's exclusive jurisdiction to determine all issues relating to the limitation of liability. *See, e.g., Ex parte Green,* 286 U.S. 437, 52 S.Ct. 602, 76 L.Ed. 1212 (1932); *Complaint of Dammers & Vanderheide,* 836 F.2d 750 (2d Cir.1988). Plaintiffs seek to fit within this second exception to exclusive federal admiralty jurisdiction, contending that this case presents a single claimant situation and that they have adequately stipulated to the Court's exclusive jurisdiction regarding limitation proceeding issues. Plaintiffs' motion to lift the stay thus presents two analytical questions: First, whether this case implicates a single or multiple claimant setting; and second, whether plaintiffs' stipulations are sufficient to protect defendant's right to claim limited liability. If this case presents a multiple claimant situation, or if plaintiffs' stipulations are inadequate to protect defendant's limited liability rights, plaintiffs' motions to lift the stay and remand this action must be denied.[2]

### III. *Single or Multiple Claimants?*

Defendants argue that this case involves multiple claimants because 1) plaintiffs are seeking damages both for loss of consortium of the spouse and children, and for wrongful death on behalf of the fatally injured seaman; 2) co-defendants, Axelson, Inc., Vetco Gray, Inc., and Chevron U.S.A. are filing or have filed claims for indemnification or contribution; 3) Vetco Gray, Inc. has filed, and Chevron U.S.A. intends to file, claims for attorneys' fees and costs.

■ As to the first argument, the Supreme Court has held that a claim for loss of consortium by one spouse is a separate and independent cause of action from the related tort claim of the other spouse. *American Export Lines, Inc. v. Alvez,* 446 U.S. 274, 284–86, 100 S.Ct. 1673, 1679–80, 64 L.Ed.2d 284 (1980) (recognizing indepen-

dent causes of action under general maritime law). *See also, Complaint of Dammers & Vanderheide, supra,* 836 F.2d at 756; *S & E Shipping Corp. v. Chesapeake & O. Rwy., supra,* 678 F.2d at 644. In *S & E Shipping,* a shipowner argued that a seaman's negligence claim was separate from his wife's loss of consortium claim, thereby rendering the case a multiple claimant situation. The Sixth Circuit found that the wife's "claim for loss of consortium does not present a separate claim requiring a *concursus* because she has stipulated that her husband's claims take priority over hers." *Id.*

The import of this finding by the Sixth Circuit must be that, but for the stipulation, the wife's loss of consortium claim would have been separate from the husband's negligence claim. Thus, where, as here, there is no such stipulation, the loss of consortium claims asserted by Mrs. Kattelman and her children on their own behalf must be conceptually treated as separate and independent from the wrongful death claim brought by them on behalf of the decedent. *Accord, Complaint of Dammers & Vanderheide, supra,* 836 F.2d at 756.

■ A split exists in the case literature over defendants' second argument—that the potential for indemnification claims against the shipowner by third parties sued by the plaintiffs is sufficient to constitute a multiple claimant situation. In *S & E Shipping, supra,* and *Universal Towing, supra,* the Sixth and Eighth Circuits held that the claims of plaintiffs and of third parties seeking indemnification should be treated as a single claim for purposes of a limitation action, because such indemnity claims are "merely derivative of the one presented by the claimant." *Universal Towing, supra,* 595 F.2d at 419.

However, in *In re AMF,* 543 F.Supp. 431 (S.D.N.Y.1982), the court posed a situation in which indemnification claims could result in the shipowner being held liable in excess

---

**2.** Doctrinally, the development of the second exception, the multiple claims/stipulations analysis, seems to stem from a desire to achieve the functional result of the first exception; that

is, to rationalize an environment that looks more like a single claim which does not threaten to exceed the fund.

of the limitation fund. In that case, plaintiff, a passenger in a pleasure boat, was injured when her boat crashed into another vessel, the LAURIE. Plaintiff brought suit in state court, naming both Richardson, the owner of the pleasure boat, and AMF, the owner of the LAURIE, as defendants. Richardson then cross-claimed against AMF for indemnification, and AMF invoked the protection of the Limitation of Liability Act.

In explaining why the court should retain jurisdiction over the entire case, Judge Knapp discussed the following hypothetical:

> The complaint in the state court action demands $2,500,000 in damages. Let us arbitrarily assume that the state jury were to fix [plaintiff's] damages at $2,000,000; find her free of contributory negligence; and find Richardson and the LAURIE to have been equally at fault. Let us further assume that, having entered judgment in the amount of $2,000,-000 against both Richardson and the Owner, [plaintiff] were to levy on the LAURIE, succeed in selling it for $400,-000, and then actually collect $1,500,000 from Richardson. On this set of assumptions, the Owner—having lost the ship—would nevertheless be faced with an unsatisfied judgment in the amount of $100,000 in [plaintiff's] hands; and an unsatisfied claim over of $500,000 by Richardson. This is precisely the result the limitation of liability act was designed to avoid.

*Id.* at 433.

The Second Circuit, in *Complaint of Dammers & Vanderheide, supra,* 836 F.2d at 757, adopted Judge Knapp's view, stating, "As long as there is a potential set of circumstances in which a shipowner could be held liable in excess of the limitation fund, the reasonable prospect of claims for indemnification should constitute a multiple claimant situation necessitating a *concursus.*"

Like the Second Circuit, this Court is persuaded by Judge Knapp's reasoning in *In re AMF.*[3] Thus, this Court holds that where, as here, a potential set of circumstances exists in which the shipowner could be held liable in excess of the limitation fund because of the claims for indemnification, a multiple claimant situation emerges which necessitates a concursus, and precludes plaintiffs' invocation of the second exception to exclusive federal admiralty jurisdiction (unless plaintiffs' stipulations would adequately shelter Otis under the Limitation of Liability Act).

■ Before turning to the adequacy of the stipulations, however, the multiple claimant analysis compels even further comment. Defendants' most persuasive argument is next: Vetco Gray's claim for attorneys' fees and costs is quite clearly separate and independent from plaintiffs' petition for damages. Several courts have held that a third party's claim for attorneys' fees and costs from a shipowner-defendant constitutes a separate and independent claim from that made by plaintiffs in a principal demand.

For example, in *S & E Shipping Corp. v. Chesapeake & Ohio Rwy. Co., supra,* 678 F.2d at 646, where a third party dockowner filed a claim for attorneys' fees and costs, the Sixth Circuit held that such a claim was independent of plaintiffs' claim for damages and that plaintiffs could not benefit by the single claim exception. What the court said there applies here with equal force:

> The attorneys' fees claim is separate from any claims for liability and presents the possibility of different and inconsistent judgments against S & E in excess of the limitation fund: [plaintiffs] would

---

**3.** In reaching this conclusion Judge Knapp relied on Section 1402 of New York's Civil Practice Law and Rules, which provides that the "amount of contribution to which a person is entitled shall be the excess paid by him over and above his equitable share of the judgment recovered by the injured party...." The result would be the same under Louisiana contribution law, which similarly provides for equal liability of solidary obligors between themselves, with entitlement to contribution for any portion paid by one obligor in excess of his equitable share. *See* La.Civ.Code art. 1804; *Simeon v. T. Smith & Son, Inc.,* 852 F.2d 1421, 1432 n. 12 (5th Cir.1988) (per curiam).

have a claim for negligence and the [third party] would have a claim for indemnity, attorneys' fees, and costs. This result could produce two competing claims greater than the limitation amount and thus require a *concursus* to marshall assets and set priorities. Allowing the [plaintiffs] to proceed with their separate state court action, therefore, would be inconsistent with the purposes of the Limitation Act.

*See also, Complaint of Dammers & Vanderheide, supra* 836 F.2d at 756; *Universal Towing, supra,* 595 F.2d at 419.

Thus, this Court holds that because this case also involves a third party complaint against Otis for costs and attorneys' fees, plaintiffs can not succeed under the second exception to exclusive admiralty jurisdiction because the attorneys' fees and costs claim is separate and independent from plaintiffs' claims.

This case, then, must be defined as one involving multiple claims.

### IV. *The Adequacy of Plaintiffs' Stipulations*

As the Court earlier indicated, if plaintiffs' stipulations are nevertheless adequate to protect the shipowner's right to the safe harbor of limitation of liability, plaintiffs can prosecute their state action, and the Court should lift the stay to that extent. However, plaintiffs' stipulations here fall short of what is necessary for a lifting of the stay.

The best illustration of this deficiency is by contrast to the stipulations made by plaintiffs in *Complaint of Dammers & Vanderheide, supra.* In *Dammers,* plaintiffs specifically stipulated that the claim of

one spouse would have "irrevocable priority" over the other spouse's *per quod* claim. Plaintiffs also made a stipulation designed to protect the shipowner against third-party indemnification claims. They agreed not to claim in excess of the fund. Plaintiffs stipulated that

> in the event there is a judgment or recovery in *any* State Court actions in excess of $7,671,000 whether against the [shipowners], or any other liable parties who may cross-claim or claim over against the [shipowners] in no event will claimant[s] ... seek to enforce said excess judgment or recovery insofar as same may expose [shipowners] to liability in excess of ... ($7,671,000) pending the adjudication of Limitation of Liability in the District Court.

*Id.* at 759. Plaintiffs also specifically stipulated that any claims for attorneys' fees or costs would have priority over their claims. Thus, the Second Circuit held that "such concessions in stipulations are sufficient to allow claimants who might not otherwise be entitled to do so to proceed with common law actions in other forums." *Id.* at 756.

Thus far, plaintiffs have made no such stipulations. Plaintiffs do not state that the wrongful death claim will have priority over all consortium claims. Plaintiffs do not protect the shipowner from excess liability arising out of third party indemnification; in fact, the word "indemnification" does not even appear in plaintiffs' stipulations. Finally, and most importantly, plaintiffs do not stipulate that a third party's attorneys' fees claim will have priority over their own claims.[4]

---

4. Defendant, Axelson, Inc., also argues that plaintiffs' stipulations are inadequate because plaintiffs failed to stipulate that the vessel owner had a right to limit his liability to the value of the fund. Axelson relies on the following language from *Ex Parte Green,* 286 U.S. 437, 439–40, 52 S.Ct. 602, 603, 76 L.Ed. 1212 (1932) to support this argument:

> 'It is clear from our opinion that the state court has no jurisdiction to determine the question of the owner's right to a limited liability, and that, if the value of the vessel be not accepted as the limit of the owner's liability, the federal court is authorized to resume jurisdiction and dispose of the whole case.'

Some courts have held that this language from *Green* only mandates a stipulation of the vessel owner's right to litigate the limitation issue in federal court. *Petition of Red Star Barge Line, Inc.,* 160 F.2d 436 (2d Cir.1947); *Complaint of Businelle Towing Corporation,* 539 F.Supp. 609 (M.D.La.1982). However, the Fifth Circuit has never explicitly so held. Moreover, no court seems to have addressed this issue in the multiple claimant, inadequate fund context. While the issue need not be disposed of here because plaintiffs' stipulations are inadequate in other respects, this Court questions the theory that *Green* requires nothing more than stipulation to

Plaintiffs' stipulations leave the ship-owner inadequately protected from liability in excess of the vessel and cargo value, thereby diminishing the strong public policy behind the limitation concept in admiralty. Because defendant's limited liability could be jeopardized by lifting the stay, this Court DENIES plaintiffs' motions and retains exclusive jurisdiction over the entire case.

---

a vessel owner's right to litigate the limitation question in federal court. Such a stipulation merely restates the language of the statute, but does not give the vessel owner the real protection the statute envisioned—a limitation of liability.