In the Matter of the Complaint of **DREDGING EQUIPMENT, INC.** as Owner and Morania Oil Tanker Corp., as Charterer and Operator of the TUG MORANIA NO. 3, Plaintiffs, for Exoneration from or Limitation of Liability.

Sandra A. **VENTURA**, Individually, and as Natural Guardian of Matthew DiPietro, a Minor, and Anthony M. Ventura and Sandra A. Ventura, Individually, and as Administrators of the Estate of Nicholas A. Ventura, Deceased, Third Party Plaintiffs,

v.

The **BARGE MORANIA NO. 400**, and Morania Tug & Barge Co., Third Party Defendants.

No. 91–CV–7975.

United States District Court, E.D. Pennsylvania.

April 13, 1994.

---

Alan M. Herman, Feldman, Shepherd, Wohlgelernter & Herman, Philadelphia, PA, for plaintiffs.

Thomas E. Seus, Kelly, McLaughlin & Foster, Philadelphia, PA, and James M. Kenny, Kenny & Stearns, New York City, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Before the Court is the motion of claimants Sandra A. Ventura, Anthony M. Ventura, Joan Pepper and Patricia Putt[1] to vacate an August 27, 1991 Court Order enjoining all proceedings against plaintiffs/third party defendants Dredging Equipment, Inc. and Morania Oil Tanker Corporation. For the reasons set forth below, claimants' motion is granted.

### Facts

This lawsuit stems from a boating accident which occurred on June 29, 1991 on the Delaware River near the Delaware Memorial Bridge, which is south of Wilmington, Delaware. A pleasure craft called the "Three Hour Tour" was allegedly struck by a barge called the Morania No. 400, which was being push-towed by a tug called the Morania No. 3. As a result of the collision, Thomas L. Pepper, III, the pilot of the Three Hour Tour, and twenty-two month old Nicholas Ventura, one of the passengers, were killed.

Prior to any claims being filed, on August 27, 1991, Dredging Equipment, Inc., the owner of Morania No. 3, and Morania Oil Tanker Corp. the operator and charterer of Morania No. 3 (herein referred to as "D & M"), filed a complaint for limitation or exoneration from liability in the U.S. District Court for the Southern District of New York pursuant to the Limitation of Liability Act, 46 U.S.C.App. §§ 181 et seq. ("the Act"). D & M also filed an Ad Interim Stipulation for Value stating that the value of Morania No. 3 amounted to $2,200,000.00. On that same day, the Honorable Kevin Duffy issued an order approving the stipulation for value, and directing the issuance of a notice to any potential claimants regarding the filing of their respective claims in the admiralty court within a specified time period. He further enjoined the prosecution of any actions or proceedings against D & M for claims arising out of the June 29, 1991 accident pending the resolution of the limitation action in admiralty court. However, suits against the barge Morania No. 400 and its owners, Morania Tug & Barge, Inc. (herein referred to as "T & B") were not enjoined.

Pursuant to Judge Duffy's order, the various passengers on the Three Hour Tour as well as the estates of Thomas Pepper, III and Nicholas Ventura filed personal injury and wrongful death claims in November, 1991 against D & M in the U.S. District Court for the Southern District of New York, which had admiralty jurisdiction over these claims. On December 9, 1991, the Ventura claimants filed a third-party complaint pursuant to Rule 14(c) of the Federal Rules of Civil Procedure against T & B. Thereafter, on December 20, 1991, this case was transferred to this Court by way of claimants' motion to transfer on the basis of *forum non conveniens*.

The Ventura claimants and the Pepper claimants also filed separate state court actions against T & B in the Philadelphia County Court of Common Pleas. The Ventura claimants also filed a claim against the estate of Thomas Pepper in the Philadelphia County Court of Common Pleas. With regard to the claims in federal court, D & M and T & B were both granted leave to file a counter-claim and cross-claim in August, 1993, against the estate of Thomas Pepper,

---

1. To clarify the parties, there are two sets of claimants in this action. The first set of claimants, Anthony and Sandra Ventura ("the Ventura claimants"), filed this action individually and as administrators of the estate of Nicholas A. Ventura, deceased. Sandra Ventura also sued as the parent and natural guardian of Matthew DiPietro, a minor. The second set of claimants is comprised of Joan Pepper and Patricia Putt.

Claimant Joan Pepper sued individually and as the administratrix of Thomas L. Pepper, III, deceased. She also sued on behalf of Thomas Gregory Pepper and Matthew T. Pepper, who are both minors. Additionally, Patricia Putt sued on behalf of Shannon Putt, a minor. The Pepper and Putt claimants are referred to as the Pepper claimants throughout this opinion.

III, Joan Pepper, Anthony Ventura and Sandra Ventura. D & M and T & B filed their claims which essentially alleged that the above claimants were contributorily negligent for the accident.

### Discussion

■ Claimants now seek to vacate Judge Duffy's order enjoining all proceedings against D & M pursuant to the Limitation of Liability Act. However, before we can reach claimants' arguments, a discussion of the Act and the competing provisions of the "Saving to Suitors" Clause at 28 U.S.C. § 1333 is warranted.

> Section 183(a) of the Act provides that the: liability of the owner of any vessel ... for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not ... exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

46 U.S.C.App. § 183(a) (1958).[2]

■ Thus, under the Act, a shipowner can limit his liability to the value of the vessel and its freight. *S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.*, 678 F.2d 636, 642 (6th Cir.1982). Once the proper procedures are undertaken by the shipowner, such as filing a petition and tendering an adequate bond, the district court must enter an order enjoining all other proceedings against the shipowner arising out of the same accident. *See* 46 U.S.C. app. § 185; Fed.R.Civ.P. Supplemental Rule F(3). *In Re Complaint of Dammers & Vanderheide & Scheepvaart Maats Christine B.V.*, 836 F.2d 750, 754–55 (2nd Cir.1988); *S & E Shipping*, 678 F.2d at 642. Thereafter, the court notifies all potential claimants to file any claims against the shipowner in admiralty court within a specified period of time. *Dammers*, 836 F.2d at

755; *see also* Fed.R.Civ.P. Supplemental Rule F(4).

■ Once all claims are filed, the court engages in a *concursus*, a proceeding where it determines "whether there was negligence, whether it was without the privity and knowledge of the owner; and if limitation is granted, how the [limitation] fund should be distributed." *Dammers*, 836 F.2d 750, 755 (2nd Cir.1988) (quoting *Universal Towing Co. v. Barrale*, 595 F.2d 414, 417 (8th Cir. 1979)). The *concursus* is necessary because the court is usually faced with an inadequate fund to satisfy all of the claims against the shipowner. Thus, the court achieves the purpose of the Act through the *concursus* by marshalling the assets and distributing them pro rata. *Dammers*, 836 F.2d at 755 (citations omitted).

However, courts have had to reconcile the purposes of the Act, which proceeds in admiralty court without a trial by jury, with the claimants' right to a trial by jury for their common law claims. By virtue of statute, district courts have exclusive original jurisdiction in "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are entitled." 28 U.S.C. § 1333(1) (1993). This statute gives claimants the right to a jury trial. *Gorman v. Cerasia*, 2 F.3d 519, 524 (3rd Cir.1993). Thus, the policies of the Act directly conflict with the "promise of 28 U.S.C. § 1333 that the exercise of admiralty jurisdiction will not deny suitors their right to common law remedies." *Dammers*, 836 F.2d at 755.

■ As a result of the conflict between these two statutes, courts have created two exceptions to the admiralty court's exclusive jurisdiction over limitation proceedings. *Gorman*, 2 F.3d at 524. The first exception occurs when the limitation fund exceeds the aggregate of the entire claims filed against the shipowner. *Id.; Dammers*, 836 F.2d at 755. In such a situation, a *concursus* is unnecessary because the fund adequately

---

**2.** The Act's purpose is to encourage the development of American merchant shipping and to protect maritime commerce. *In Re Complaint of Dammers & Vanderheide & Scheepvaart Maats*

*Christina B.V.*, 836 F.2d 750, 754 (2nd Cir.1988); *S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.*, 678 F.2d 636, 642 n. 11 (6th Cir.1982).

covers all potential claims. *Gorman,* 2 F.3d at 524. As the Supreme Court has reasoned, to require parties to proceed in admiralty court when this situation exists:

> would transform the Act from a protective instrument to an offensive weapon by which the shipowner could deprive suitors of their common-law rights, even where the limitation fund is known to be more than adequate to satisfy all demands upon it. The shipowner's right to limit liability is not so boundless. The Act is not one of immunity from liability but of limitation of it and we read no other privilege for the shipowner into its language over and above that granting him limited liability.

*Lake Tankers Corp. v. Henn,* 354 U.S. 147, 152–53, 77 S.Ct. 1269, 1272, 1 L.Ed.2d 1246 (1957) (quoted in *Universal Towing,* 595 F.2d 414, 418 (8th Cir.1979)).

The second situation, which is not applicable in this case, occurs when a single claimant brings a claim in excess of the limitation fund. In both of these situations, however, the court will not dissolve the injunction that prohibits instituting any other proceedings against the shipowner until the claimants file a stipulation conceding that their claims are equal to (or less than) the value of the vessel and freight, and also agreeing to waive any *res judicata* arguments based on the state court's judgment. *In Re Complaint of Midland Enterprises, Inc.,* 886 F.2d 812, 814 (6th Cir.1989) (citations omitted); *S & E Shipping,* 678 F.2d 636, 643 n. 13 (6th Cir.1982). Further, they must concede that the admiralty court retains exclusive jurisdiction to determine all issues concerning the limitation of liability. *S & E Shipping,* 678 F.2d at 643 n. 13; *Dammers,* 836 F.2d at 755.

■ While the district court has broad discretion in administering relief under the Act, and particularly when it is considering to dissolve an injunction, if either of these two situations are present, the court's discretion is much narrower. *Universal Towing,* 595 F.2d at 420. There, the court must dissolve the injunction unless the shipowner demonstrates his right to limit liability is prejudiced. *Gorman,* 2 F.3d at 523; *Universal Towing,* 595 F.2d at 420 (citing *Lake Tankers Corp. v. Henn,* 354 U.S. 147, 152–53, 77 S.Ct. 1269, 1272, 1 L.Ed.2d 1246 (1957)).

We turn now to the arguments presented by the parties to determine whether it is appropriate to dissolve the injunction in this case in order for claimants to proceed with their claims in state court. First, we note that this case clearly falls within the "multiple claimant" adequate fund exception to the Act. As indicated by the amended joint stipulation and partial release filed by claimants, the aggregate of the claims is equal to 2.2 million dollars. Claimants have also stipulated that they will not seek to recover any amounts over 2.2 million dollars should a verdict in excess of that amount be awarded. Arguably, because the aggregate of the claims does not exceed the amount of the fund in this case, there is no need for a *concursus* because the fund is sufficient to pay all potential claims, and claimants need not compete with one another for larger portions of a limited fund. *See S & E Shipping,* 678 F.2d 636, 643 (6th Cir.1982). Thus, as stated above, we must dissolve the injunction assuming that the appropriate stipulations have been filed (which we will discuss *infra*) unless D & M can demonstrate that their right to limit liability is prejudiced by dissolution of the injunction.

■ D & M argue that dissolution of the injunction is not warranted in this case. First, D & M argue that claimants invoked the admiralty jurisdiction of the federal court by bringing their third-party action against T & B, and therefore they are estopped from pursuing their claims in state court. D & M assert that even if the injunction was dissolved, the claims against T & B would survive and remain in federal court. Thus, D & M argue that the claims against them should also be heard in federal court for reasons of judicial economy and fairness.

This argument fails to persuade the Court that the injunction should not be dissolved. It should be noted that the Ventura claimants were the only claimants to file a third-party claim against T & B. They assert that they filed their claim against T & B in federal court so as to protect and preserve any claims against T & B since their claims arose out of the same facts as the claim against D

& M. However, the Ventura claimants have now agreed to voluntarily dismiss their claims without prejudice against T & B pursuant to Rule 41 of the Federal Rules of Civil Procedure. As such, even if there was any prejudice to D & M resulting from the third-party claims filed by the Ventura claimants, it no longer remains with the dismissal of that action.

■ Next D & M argue that this action should stay in admiralty court because there are other matters already pending before this Court such as the counterclaim and cross-claim filed by D & M against some of the claimants for negligence. Additionally, D & M contend that dissolving the injunction and allowing the claimants to proceed in state court would cause undue prejudice and delay because this case has been in federal court since 1991, and D & M have prepared their case with the mindset that it would be in federal court. D & M also contend that claimants are basically forum shopping, in that an unfavorable Coast Guard report which would be admissible under the Federal Rules of Evidence but not admissible in state court is the motivation for claimants' request to dissolve the injunction.

Despite D & M's objections, this Court is still not convinced that there will be any prejudice resulting from a dissolution of the injunction and allowing claimants to proceed in state court. We can appreciate the fact that this case has been in federal court since 1991, and to dissolve the injunction at this point will inconvenience the parties. However, it does not prejudice D & M's right to limit liability. *See e.g. Universal Towing Co. v. Barrale,* 595 F.2d 414 (8th Cir.1979) (district court abused discretion in refusing to dissolve injunction, in part, on ground that claimant delayed in filing consent, where shipowners did not demonstrate any prejudice to right to limit liability). Because of the stipulation, claimants can only be awarded up to 2.2 million dollars, which is the amount of the limitation fund. Assuming the stipulation is adequate, there is no possibility that D & M will be liable for more than that amount, and their interests will be fully protected while proceeding in state court.

Further, they will still have an opportunity to litigate their claims against the claimants. Once the injunction is dissolved, D & M's claims against the claimants, which are derivative of the limitation action because they seek indemnity and contribution from the claimants, will become moot. However, nothing precludes D & M from refiling those claims in state court, nor do D & M claim that they will be precluded from doing so. *See e.g. Puerto Rico Maritime Shipping Auth. v. Leith,* 668 F.2d 46, 50–51 (1st Cir. 1981) (no abuse of discretion where court allowed voluntary dismissal by plaintiff when defendants did not allege they would be precluded from raising any defenses or claims in state court). Moreover, while the parties have already conducted all of their discovery at this point, their efforts have not been wasted because they can still use the fruits of their discovery efforts in state court. *See id.* at 50.

Nor do we think that claimants are merely forum shopping because of an unfavorable Coast Guard report. Claimants assert that the reason for the present motion at this point in time is that they originally thought their claims exceeded the limitation fund. However, in September, 1993, the Second Circuit Court of Appeals significantly limited the damages recoverable by a non-dependent parent in wrongful death and survival actions as governed by federal maritime law. *See Wahlstrom v. Kawasaki Heavy Indus., Ltd.,* 4 F.3d 1084 (2nd Cir.1993), *cert denied,* —— U.S. ——, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994). Pursuant to that decision, claimants realized the potential value of the claim asserted on behalf of the estate of Nicholas Ventura was significantly reduced. In turn, the aggregate of the claims was reduced so as not to exceed the value of the limitation fund. Indeed, it appears that claimants filed their motion to vacate in November 1993, a little more than two months after the *Wahlstrom* decision.

Given that we do not believe there is any bad faith on the part of claimants, nor is there any prejudice to D & M with regard to their right to limit liability, we must vacate the injunction originally imposed by Judge Duffy because there is no longer a need for a

*concursus* in admiralty court. In so stating, we are mindful of the conflict between the Act and the saving to suitors clause, and the policy of allowing claimants to proceed with their claims in a court with the right to a jury trial. As the Supreme Court stated in *Lake Tankers:*

> there can be no reason why a shipowner ... should be treated any more favorably than an airline, bus, or railroad company. None of them can force a damage claimant to trial without a jury. They, too, must suffer a multiplicity of suits. Likewise, the shipowner, so long as his claim of limited liability is not jeopardized, is subject to all common-law remedies available against other parties in damage actions.

*Lake Tankers Corp. v. Henn,* 354 U.S. 147, 154, 77 S.Ct. 1269, 1273, 1 L.Ed.2d 1246 (1957).

Balancing the right of claimants with the right of shipowners to limit liability, we find that by dissolving the injunction, both parties' interests are protected in this case. D & M's right to limit liability is protected by the stipulation, and claimants have the right to litigate their claims before a jury. The fact that D & M may have a tactical advantage by use of the Coast Guard report in federal court is not enough to deny claimants' right to pursue their cause of action under the saving to suitors clause. *See e.g. Jefferson Barracks Marine Serv. v. Casey,* 763 F.2d 1007, 1011 (8th Cir.1985) (federal procedural rules shall not abrogate one's right to pursue cause of action under saving to suitors clause). As such, D & M's arguments are without merit.

D & M next argue that the stipulation filed by claimants is inadequate to protect their interests. D & M rely on a case decided by the Second Circuit Court of Appeals in 1955 [3] as support for the following contentions: 1) that the stipulation is inadequate because each claimant did not specifically allege his reduced claim, rather, the

stipulation only contains two lump sum damage claims on behalf of all the claimants; 2) that the claimants did not expressly agree to multiple representation by the attorneys in this case; and 3) that each claimant did not sign the stipulation so as to indicate express consent for reducing their claims.

Stipulations that have been found adequate in other cases have included a claim by claimants conceding the district court's retention of jurisdiction over limitation of liability issues, a consent to waive any claims of *res judicata* relevant to any limitation of liability based on judgments rendered in state court, a consent for priority of claims of indemnification for attorneys' fees and costs over the claims of claimants, and, a claim conceding the sufficiency of the limitation fund with regard to their individual claims.[4] *See In Re Two "R" Drilling Co., Inc.,* 943 F.2d 576 (5th Cir.1991); *In Re Mister Wayne,* 729 F.Supp. 1124 (E.D.La.1989). The stipulation provided by claimants in this case sets forth the following: 1) a claim expressly conceding D & M's right to litigate all issues regarding limitation of liability in this Court; 2) a consent by each claimant waiving any claim of *res judicata* relevant to the limitation issue based on any judgment rendered in any state court; 3) a reduced damage claim for each claimant and a statement that the claimant will not seek to enforce any monetary judgment in excess of that amount in any state court action; and 4) that any claims for attorneys' fees by a co-defendant or third party will have priority over the claimants' claims. As previously stated, the aggregate of all stipulated claims amounts to 2.2 million dollars, which is the amount of the limitation fund.

From the stipulation, claimants have provided adequate protection as has been required by other courts when dissolving an injunction. There is no fear that D & M will be liable for more than 2.2 million dollars, therefore their right to limit liability has

---

3. *See Petition of Trinidad,* 229 F.2d 423 (2nd Cir.1955).

4. This last element has been questioned by several courts. *See In Re Mister Wayne,* 729 F.Supp. 1124, 1129 (E.D.La.1989) ("A claimant need not stipulate to the value of the vessel in order to

have the court lift the stay. In fact, a claimant need only stipulate to the exclusive admiralty jurisdiction over all limitation of liability questions and waive any potential res judicata argument relevant to the limitation issue.").

been protected, as is this Court's right to retain admiralty jurisdiction should an issue regarding limitation of liability arise. Further, we note that claimants have filed an amended stipulation and partial release which addresses each of D & M's concerns. For instance, each individual claimant has signed the stipulation, and has consented to the multiple representation by the attorneys. Given that claimants have addressed all of D & M's concerns, we leave the question of whether such additional elements are necessary to protect the shipowners' interest for another day.

### Conclusion

In sum, claimants' motion to vacate the injunction must be granted. This case falls within an exception to the Limitation of Liability Act because the aggregate of the claims does not exceed the limitation fund and therefore a *concursus* is unnecessary. Since D & M's right to limit liability is adequately protected by the stipulation filed by claimants, claimants must be allowed to proceed in state court with a trial by jury as is their right under the "saving to suitors" clause of 28 U.S.C. § 1333.

An appropriate order follows.

### ORDER

AND NOW, this 13th day of April, 1994, upon consideration of the motion of claimants to vacate the August 27, 1991 order enjoining all proceedings against plaintiffs/third party defendants Dredging Equipment, Inc. and Morania Oil Tanker Corp., and all responses thereto, it is hereby ORDERED that claimants' motion is GRANTED, and it is further ORDERED:

1) that based upon the representations of the Ventura claimants to voluntarily dismiss their third party complaint against Morania No. 400 and Morania Tug & Barge pursuant to Rule 41 of the Federal Rules of Civil Procedure, the Ventura claimants shall file the appropriate motion to comply with their representations within ten (10) days from the entry of this Order; and

2) upon the dismissal of the above third party action, this Court will enter an Order

vacating the August 27, 1991 order enjoining all proceedings against Dredging Equipment, Inc. and Morania Oil Tanker, Corp.; and

3) upon dismissal of the above third party action, this Court will enter an Order staying the limitation action and reserving to the parties the right to file a motion to reopen the matter should any limitation of liability issues arise.